The opinion of the court was delivered by
White, J.
The plaintiffs, having bought from defendant a piece of real-estate in the parish of St. Tammany by act of sale passed before E. G. Gottschalk, notary public, on the 14th of June, 1866, instituted on the 25th of March, 1872, the present suit, in which they prayed that the sale made to them by the defendant be decreed to be null and void, that she be ordered to receive back the property by her sold them. They asked, in addition, the repayment of the cash price paid, and for a judgment for the value of the improvements put by them on the property. The cause of action upon which this prayer was founded is stated as follows:
1. The non-compliance by plaintiff with an obligation assumed by her to settle a tacit mortgage in favor of certain minors said to rest on the property sold, at the date of sale.
2. The fact that the defendant was not the owner of the property sold at the time of sale, rendering the sale therefore absolutely null under C. C. 2452.
The defendant resists on the following grounds:
First. That the mortgage complained of was no longer binding on the property sold, because of its not having been registered under the act of 1870. That even if binding the plaintiffs had retained under the terms of the act of sale a sum adequate to pay the mortgage and therefore could not complain of its existence.
Second. That the want of title complained of was as follows: the property sold to them by defendant was acquired by her from Mrs. Odile Derbes, widow of John Baptist Bellocq, and had belonged to the community existing between them, had passed at the date of the death of Bellocq to his surviving widow, as owner of one-half, and to his five children as owners of the other half. That if at the time of sale to her by Mrs. Derbes or at the date of her sale to plaintiffs there was any nullity or want of title it had been cured by a proper ratification made by the heirs of Derbes, which ratification completely destroyed plaintiffs’ right of action and deprived them of all just cause of complaint.
Third. Tnat if there was a want of title at the date of her sale, it was known to the purchaser, one of the plaintiffs, and he can not therefore complain.
Fourth. That since the date of sale to plaintiff he had been either through himself or his co-plaintiff, to whom he had sold, in undisturbed possession of the property, without threat of eviction, and therefore *166 could not be heard to attack the title under which he held for the purpose of relieving himself from the obligations of a contract legally entered into.
The evidence in the record both as to the title and claimed ratification is documentary, and the proof ministered by it is as follows :
On the 29th of September, 1860, Mrs. Derbes sold to defendant the property in controversy. At the time of the sale the property was only owned by her in indivisión with her children, having formed a part of the community which had existed between herself and her deceased husband. On the 14th of June, 1866, the defendant transferred the-property thus acquired to Oharpaux, one of the plaintiffs, the act of sale containing the following stipulation : “ and it is further understood and agreed that the two notes thus subscribed by him, said Oharpaux, shall remain in his possession until the said Mrs. Gibert shall have complied with all the stipulations herein contained concerning the furnishing of a good and valid title to said property.” On the 8th of April, 1867, Charpaux transferred this property to his co-plaintiff. There is no question as to the undisturbed possession of both since the sale, up to the institution of the present suit, on the 25th March, 1872, nearly six years after the date of their acquisition. The facts as to the ratification are as follows : On the 13th of April, 1872, a few days after the institution of this suit, the major heirs of John Baptist Bellocq expressly, by act before Doriocourt, notary public, ratified and confirmed the sale made by their mother, Mrs. Derbes, to the present defendant. One of the heirs being a minor, a petition was presented to the Second District Court which stated that by some mistake in the original proceedings had to adjudicate the community property to the widow upon the death of her husband the property in controversy had been omitted or not adjudicated ; that in consequence of such omission and want of knowledge she had sold said undivided half along with her own; that she was willing that the minor’s share of the proceeds should be taken from the cash proceeds of sale, which sale exceeded the value of the property in the inventory of her husband’s succession. She prayed a family meeting, which was ordered and held, and recommended the confirmation and ratification of the sale, the deliberations were homologated by the court, and authority given to pass the necessary act of ratification, which was accordingly done. Under this state of facts judgment was rendered by the lower court annulling the sale, and that judgment is now before us for review.
The counsel for plaintiff and appellee have waived in their brief the question of the right to rescind growing out of the alleged mortgage. Their position, as we look at it, is :
1. That the ratification tendered is not sufficient.
*167 2. That even if sufficient, there being no title in their vendor at the time of their purchase, the sale was null under 0. O. 2452. That any ratification made after the institution of their suit is inoperative, as their rights are to be tested by the state of things in existence at the date of their demand. We think none of these positions tenable.
1. The ratification is good; as to the major heirs, it certainly validated the title; as to the minor heir, it had the same effect. We deem it useless to enter into a discussion as to the nature of the nullity of the sale of a minor’s property by private sale. Grant that such a nullity ■ be one of quasi public order, it is established in the interests of the minor, and can be ratified by him when sui juris. This was not, however, a sale of minor’s property; it was a sale of community property. The court and family meeting would have had the power to adjudicate by original act and the ratification did nothing more. Whatever • dissidence may exist on the subject, the overwhelming weight of authority is in favor of the power of the court and family meeting to do by ratification that which they could do by original act. In fact, such is the textual provision of our Code. C. C. 1794; Bank of Lafayette vs. Delery, 2 A. 648 ; Vaughan vs. Christine, 3 A. 328 ; Dunbar vs. Creditors, 2 A. 727.
2. The ratification being binding, can the plaintiff be heard to escape his obligations by complaining of a nullity which is cured completely? His position is that his rights were fixed by his petition, that' the nullity is absolute, and no ratification tendered him after his suit is of any effect. Let us see. Grant for the purposes of examination that' a vendee may be heard to invoke the nullity of a sale made in violation of C. C. 2452, even although not threatened with eviction. Grant that the nullity of the sale of the property of another is so radical that the' vendeeby a simple act of volition may repudiate it, may refuse to accept a ratification tendered after judicial demand. Are the plaintiffs within the rule ? Is the sale in controversy, the sale of the property of another, within the prohibition of C. C. 2452 ?
In saying that the sale of the property of another is null, the authors of the Code Napoleon, art. 1599, whence C. C. 2452 is drawn, departed from the ancient law. The departure, however, was rendered necessary in consequence of a fundamental difference between the theory-of sales as embraced in the Roman law and that adopted in the Code Napoleon, and our own Code, the Roman law sale importing simply possession, while that of the Code Napoleon and our own imports not only the transmission of possession but also that of ownership or title. These reasons were the operating cause of the insertion of the provision of article 1599 in the Code Napoleon, whence they have passed into our own, and were expressed by the compilers who framed and lawgivers who adopted the Code Napoleon.
*168 Pardess. Expose des Motifs, No. 19 ; Locre, Title 7, p. 73 ; Grenier, Discours No. 15 ; Loeré, Title 7, p. 109 ; Eaure, Rapport auTribunat,No. 18 ; Loeré, Title 7, p. 91.
Does a sale in terms purporting not to transfer title fall within the Inhibition of art. O. C. 2452 ? We think not, because if that article declares the nullity of the sale of the property of another person for the reason that title is supposed to flow from the act, its provisions manifestly do not apply to a sale, where by agreement between the parties the title is not conveyed hut the obligation to procure it is simply assumed by the vendor. Such is the opinion of the French jurisconsults : “ Je conviens avec vous que je vous vends tel immeuble appartenant a votre voisin, et je m’oblige a l’acquerir, a vous le livrer. Est-ce-la vente de la chose d’autrui ? Non, a vrai dire, ce n’est pas une vente ; le dóbiteur s’engage a acquerir d’abord l’immeuble, ce qui est une obligation de faire. C’est seulement quand il aura acquis l’immeuble que la vente s’accomplira. De méme, si je me porte fort que Pierre vous vendrá sa maison pour tel prix, la convention est valable; sur ce point il n’y a pas de doute, puisque nous avons une téxte: l’article 1120; ce n’est pas la vente de la chose d’autrui par 1’excellente raison que ce n’est pas une vente ; c’est une obligation •de faire, sanctionnée pas des dommages--intóréts. Il faudrait encore regarder comme valable la convention formulóe en ces termes: “Je vous vends la maison de Pierre pour tel prix.” Ce n’est pas une vente ; c’est un engagement ou de me procurer cette maison pour vous la livrer, ou de faire que Pierre vous la livre. La formule difiere, mais la convention est identique.” Laurent, v. 24, p. 115.
Zachariee says: “ D’un autre cote, cette disposition est inapplicable a la vente de la chose d’autrui, contractée sous la condition suspensive de 1’acqu'isition de cette chose par le vendeur, ainsi qu’a celle lors de laquelle ce dernier s’est porté fort pour la veritable proprietaire.”
Troplong says: “On peut aussi vendre la chose d’autrui en se portant fort de faire ratifier la vente par le propriétaire.”
Troplong de La Vente, vol. 1, p. 318, No. 234.
Duranton, 1.16, No. 179.
The jurisprudence of France inculcates the same principle. DePreignan c Hue & Fortanier, Cassation 8th January, 1866. Journal du Palais for 1866, p. 258: and so teach the courts of Belgium upon an identical provision of law. Laurent, vol. 4, p. 118.
Does the sale in this case come within this doctrine? It manifestly does. The terms of the act placed upon the vendor the obligation of procuring title, and these terms read by the allegations of the petition make it more than clear that the act did not purport to transmit title, but that the procurement of title was simply a condition of the sale. The averment is “ that in and by said act of sale it was stipulated *169 and agreed * * * * until certain defects in the title were cured the cash payment of one thousand dollars should not be exigible.”
Again: “ that on account of the unreasonable delay and continued failure on the part of defendant to perfect the title,” etc., etc. The sale then is not stricken with the nullity provided under C. C. 2452. It did not purport per se to transmit title. The procurement of title being one of the obligations of the contract, of course legal rights resulted from it. Whatever view may be taken, the obligation was either the obligation of doing or a condition. If of doing, then inaction not being an active violation default was prerequisite. C. C. 1931,1932,1933. We do not consider that the offer to annul was such default. If a condition, of ■course under the implied resolutory condition, the contract1 being commutative, it could be rescinded in the event of non-performance; but rescission under the implied resolutory condition is within our sound ■discretion as to time. 0. C. 2047. We see no reason to rescind a sale on the ground of non-compliance with the condition thereof when a full performance is tendered in answer to the suit.
The judgment of the lower court was in favor of the plaintiff. It is reversed; and, proceeding to render such judgment as should have been rendered by the lower court, it is ordered, adjudged, and decreed that there be judgment against the plaintiff and in favor of the defendant, dismissing plaintiffs’ suit at their cost; all costs of the lower court prior to the filing of defendant’s answer to be paid by defendant.
Rehearing refused.